## CHRISMAN v. BRYANT, et al.

[66 South. 779.]

1. WILLS. *Construction. Description of property. General legacy. Intention.*

Where a testator bequeaths a large amount of real and personal property to his son and daughter and made them his residuary legatees and also made gifts to several grandchildren, and then gave to a granddaughter, B., certain levee bonds described as "bonds 3 and 4, number 43, three thousand dollars," and a legacy of two hundred and fifty dollars; the bonds to be held in trust for her and her children for ten years, and to a granddaughter, C., he gave two hundred and fifty dollars, and bonds numbers 3 and 4, thus twice disposing of bonds 3 and 4, all of the testator's other bonds were otherwise disposed of. The court in construing the will *held,* that describing the bonds given in the two legacies, the writing of the numbers 3 and 4, two different times in the will was a clerical error, and that it was not the intention of the testator to give these same two bonds in both legacies, nor to bequeath them to the two parties as tenants in common, but that the legacy to B. should be construed as a general legacy and the two bonds necessary to give both granddaughters the full amount which the testator intended them to have should be supplied from the residuary estate.

2. WILL. *Construction. Intention.*

The main purpose in interpreting a will, is to learn the intention of the testator, and such intention is to be ascertained from a construction of the entire instrument and from the circumstances surrounding the testator when he executed it.

APPEAL from the chancery court of Madison county.

HON. G. G. LYELLE, Chancellor.

Petition by J. J. Chrisman, executor of J. B. Chrisman, deceased, against Mrs. Carrie Bryant and others, for a construction of the will of the decedent. From a decree construing the will the executor appeals.

The facts are fully stated in the opinion of the court.

*Green & Green,* for appellant.

Where there is a bequest of the identical property to different persons by two clauses in a will, that which is last, will revoke the former and prevail. The rule of interpretation is given in *Ball* v. *Phelan,* 94 Miss. 316, where it is declared that the intention must be gathered from the language used in the will taken from its four corners and where intent is expressed, no room exists for the secondary rules usually adopted for the ascertainment thereof.

As said in *McGehee* v. *McGehee,* 74 Miss. 386, the true rule of a will is to ascertain the intention of the testator from the will itself, the whole will taken together. No word can be supplied even though by so doing the will would be made in accordance with law. *Caldwell* v. *Willis,* 57 Miss. 555, sylabus 7; *Johnson* v. *Delome,* 77 Miss. 27; *Sluigsby* v. *Granizer,* 7 H. L. Case, 284; *Williams* v. *Ball,* 2 Miss. Decision 536; *Vannerson* v. *Culbertson,* 10 S. & M. 150; Coke on Littleton, 646. If not, then the parties are tenants in common of the property so devised, each taking a half interest therein. But this early rule of the common law has been modified by the mere doctrine and the more recent rule is this stated by Thomas on Coke on Littleton, 642: "There is a great contrariety in the books, on the effect of two inconsistent devises in the same will. Some hold with Lord Coke, that the second devise revokes the first. Plowd. 541. Others think that both devises are void on account of the repugnancy. Ow. 84. But the opinion supported by the greatest number of authorities is, that the two devisees shall take in moieties. The authorities for and against Lord Coke's opinion are well collected and arranged in note in the English edition of Plowden. See page 541. Also amongst those who think that both devises shall operate, there is some difference as to the manner in which the two devisees ought to take. In some of the old books it is said generally, that there shall be joint tenancy. But

according to the modern opinion, and as it seems, the best, there will be a joint tenancy or a tenancy in common, according to the words used in limiting the two estates; by which we presume it is meant that if the two estates given by the will have the unity or sameness of interest in point of quantity essential to a joint tenancy, the devisees shall be joint tenants, but otherwise shall be tenants in common. See 3 Atk. 493. Hagr. n. 1. 112 b. (144).

"That if a thing be given in one part of a will, to one, and in another part to another, the devisees shall take in moieties, see Acc. *Edwards* v. *Symons*, 6 Taunt. 218, arg. But the general rule is, that of two inconsistent limitations in a will, the latter prevails. See *Wykham* v. *Wykham*, 18 Ves. 421. Ed." Theobald on Wills, 752; *Paramour* v. *Yardley*, Plow. 451; *Bennett's case*, Cro. Eliz. 9; *Sherratt* v. *Bentley*, 2 M. K. 149, 162. *Paramour* v. *Yardley*, 2 Plowdenm 540; Litt, 112, b. 2; Rol. R. 423, *arguendo*, Owen 84, per ANDERSON, J.; Swinb. 552, 553. Godolph Orph. Leg. 461. But by the greater opinions it seems that B. and C. shall be joint tenants, as appears in 3 Leon. 11, pl. 27, per DYER & BROWN, J.J., 3 Bulst. 105, Per DODDER, J., 1 Rol. R. 320; Per Idem. Yelv. 210; Per WILLIAMS, J., Lane 118; Per TAMFIELD, Ch. Cro. E. 9, pl. 2; Per ANDERSON & MEAD, JJ., Cro. J. 49, Jenk. 256, Pl. 50, 10 Mod. 522, 1 Ven. 30. Treat. of Wills, 129, 130; Pickering's Lect., Mich. Term, 33 Geo. 2. In *Ridouts Case*, 3 Atk. 492, it is said: "The law presumes that the testator even in making his will may vary the intention; as suppose a man gives a farm in Dale to A. and his heirs in one part of the will, and in another to B. and his heirs, it has been held by the old books to be a revocation; but latterly construed either a joint tenancy or tenancy in common, according to the limitation (1). "Note: Where a man gives a farm in Dale to A. and his heirs in one part of his will and in another to B.

and his heirs, it is now construed either a joint tenancy
or tenancy in common, according to the limitation.''

In 2 Minor's Inst., the rule upon the subject is thus
stated at page 1059: Where two clauses are irreconcil-
ably repugnant, in a deed, the first, and in a will, the last,
prevails. ''It will be observed, in the application of this
maxim, that the clauses are supposed to be absolutely in-
capable of being reconciled, and that if, by any admis-
sible construction the repugnancy can be avoided, there
can be no occasion to invoke the rule under consideration.
Thus, if in different clauses of a deed or will the same
subject be given to different persons, the clauses are not
irreconcilably repugnant, for the persons may take as
joint tenants, or as tenants in common, according to the
terms in which the grants or devises are conceived; and
such, according to the better opinion, notwithstanding
Lord Coke (2 Th. Co. Lit. 646) countenances a contrary
doctrine, seems to be the preferable interpretation. 2
Th. Co. Lit. 646, N. 12. *Ridout* v. *Pain,* 3 Atk. 493; *Par-
amour* v. *Yardley,* 2 Plowd. 541, n. (do; *Price* v. *Cole,*
83 Va. 343, 345.)

''If, however, the repugnancy is in no admissible way,
capable of being reconciled, nothing remains but to apply
this rule, and to hold that in a deed the first, and in a will
the last, prevails (*Wykham* v. *Wykham,* 18 Ves. 421;
*Barksdale* v. *White,* 28 Grat. 227 et seq.) although such
a method of interpretation, seeing that the whole of both
classes of instruments must be considered together, and
are executed at the same moment of time, can be justified
only by rigorous necessity.''

The law therefore seems to be perfectly well settled
that if the older rule announced by Lord Coke be fol-
lowed and the conflict in the will be held irreconcilable,
as it must be in the present case, then the first legacy is
revoked by the second. But if this rule be not followed,
but the further rule of construction that the parties shall
be tenants in common by giving effect as declared by

Professor Minor and Mr. Theobald, wherein they are supported by all of the modern cases, then these several parties took the bonds mentioned as tenants in common, the express declaration of the will being to the effect that it was only the bonds in the possession of Mr. Davis, which were dealt with, and these bonds were dealt with twice, given to two different parties, and by said gift the authorities declare that the parties take under the present rule as tenants in common.

*Luther Manship, Jr.* and *Brady & Dean,* for appellee.

As far back as 1858 this court said: ''The intention of the testator, provided that intention be legal, is the law which regulates the construction of his will. That intention is to be gathered from the whole will, and, from the nature of the subject, overrides all technical rules which relate to the construction of words, rather than the nature of the estate. For though technical rules of law and the authority of adjudged cases are not to be disregarded in the interpretation of wills, yet their construction is so dependent upon the language and circumstances of each particular instrument, that adjudged cases become of less authority and more hazardous application, then decisions on any other branch of the law.'' 36 Miss. 564.

The case of *C. H. Williams* v. *Sarah P. Ball et al.,* decided April 11, 1881, and cited by appellant in his brief, decided that the court would look at the circumstances surrounding the testator at the time the will was written, but the court refused to change the whole spirit and intention of the will by limiting it to a certain period of existence, terminable upon some condition not expressed in the will. In *Hampton R. Lusby et al.* v. *Hezekiah Cobb et al.,* this principle of interpretation is repeatedly stressed (80 Miss. 715, on page 726). *Clarke* v. *Boorman's executor,* 18 Wall. 502, 21 L. Ed. 904; *Bosley* v. *Wyatt,* 14 How. 390, 14 L. Ed. 468; *Ball* v. *Phelan et al.,*

94 Miss. 293; *Re Dongers Estate,* 103 Wis. 497, 79 N. W. 787, 74 Am. St. Rep. 885.

Going back somewhat in the decisions, we find this court, in *Mary Gilliam* v. *Chancellor & Murray, Extrs.,* 43 Miss. 437, at page 453, using this language: "On question of interpretations it is always competent by parol to prove the situation of the testator, the condition, character, etc., of his property, etc., so that the court may, as nearly as possible, realize the surroundings of the testator, his relations to the subject with which he is dealing, and thereby be the better qualified to reach his meaning and purposes through the language employed in his will to express them." *Rebecca Watson et al.* v. *D. C. Blackwood, Guardian,* 50 Miss. 15, at page 20, 2 Jarm. on Wills, 741; *Brown* v. *Thorndyke,* 15 Pick. 400; *Gilliam* v. *Chancellor & Murray,* 43 Miss. 435; *Chase* v. *Lockerman,* 11 Gill & Johns, 206; *Covert* v. *Sebern,* 73 Ia. 564, 35 N. W. 636. *In Re Dominci,* 151 Cal. 181, 90 Pac. 448; *Selwood* v. *Mildmay,* 3 Ves. Jr. 306; *Cleverly* v. *Cleverly,* 124 Mass. 314; *Klock* v. *Stevens,* 20 Miss. 383, 45 N. Y. Supp. 603; *Nolan* v. *Balton,* 25 Ga. 352; *Hodgson* v. *Hodgson,* 2 Vern. 593.

The whole purpose of all jurisdictions in such matters is to ascertain the will of the testator and see that it is put into effect. To accomplish this, they will, in this day and time, go to almost any lengths that will not actually require them to rewrite the decedents' last will and testament.

REED, J., delivered the opinion of the court.

This case involves the construction of certain provisions in the will of Judge J. B. Chrisman. The matter was presented to the chancery court upon a petition, united in by the several parties in interest, praying that the will be construed and the rights of the parties defined. From a decree by the chancellor construing the will, this appeal was taken by J. J. Chrisman, appellant,

one of the executors and one of the residuary legatees therein.

The provisions of the will for construction are items 7 and 8, which are as follows:

"Item 7. I give to my friend Z. D. Davis as trustee for the benefit of Carrie Bryant and her children for a term of ten years the interest on the following levee bonds: Bonds 3, 4 and number 43, three thousand dollars, the interest to be paid to her semiannually for the benefit of herself and children. My purpose is to secure the income to Carrie for that length of time, without giving her control of said bonds, though the title as thus passed vests in her, and the trustee is directed to deliver to her at the end of the ten years, said principal and interest on said bonds unpaid in his hands. My executors will also pay her at once a special legacy of two hundred and fifty dollars.

"Item 8. I give Clara May the following bonds, and two hundred and fifty dollars in money: One Miss. levee district refunding bond, four and one-half per cent. denomination

$1,000, number 3 ......................... $1,000.00
Do. number 4............................. 1,000.00
Cash ........... ............. .. .............. ...... 250.00

"And I hereby constitute the Brookhaven Bank & Trust Company the guardian of the estate which is to be administered to the laws of the state as in case of guardianship. I ask the said bank if in accordance with their interest to allow her brother, J. B. Chrisman, Jr., to file such documents as will be necessary in the conduct of the case. If they are unwilling to this, and to a fair fee, then my executor will proceed to have the chancery court appoint her a guardian."

Appellant contends that the bonds Nos. 3 and 4, having been bequeathed twice and given to two different persons, will be either taken by the two legatees jointly, or go to the last-named legatee. His argument is that:

(1) "Where there is a bequest of the identical property to different persons by two clauses in a will, that which is last will revoke the former and prevail." Or (2) "if not, then the parties are tenants in common of the property so devised, each taking half interest therein."

The main pupose in interpreting a will is to learn the intention of the testator. This is to be ascertained from a consideration of the entire instrument, and from the circumstances which surrounded the testator when he executed it. In the case of *Watson* v. *Blackwood,* 50 Miss. 15, it was said by Judge SIMRALL, delivering the opinion of the court, that:

"Courts will look at the circumstances which surrounded the testator—will through these means put themselves in his place—and then apply the terms of the instrument to its subject-matter and objects. . . . All parts of the will are to be construed in relation to each other, so as to form, if possible, a consistent whole. . . . Although there may be apparent inconsistency and incongruity in several parts, yet if there can be clearly discerned a general intent, that should prevail, and overrule the particular, although the former be first expressed. The governing intent ought to control in the construction, if it can be made compatible with the import of the language used. . . . The governing intent to be gathered from the entire instrument must be adopted as the central idea, to give harmony and system to the testamentary plan. . . ."

Judge Chrisman in his holographic will written at some length, made a disposition of his entire estate. He gave to his son J. J. Chrisman considerable real estate, and also certain personal property. To his daughter Mrs. Ada Magee he gave considerable real and personal estate. He made these two children his residuary legatees and devisees, and he also appointed them executors of his will.

In his bequest to his daughter Mrs. Magee he gave ten bonds each of the denomination of one thousand dollars, to be held in trust for ten years by Mr. Z. D. Davis for her use and benefit, and providing disposition of the principal amount in the event of her death before the expiration of the time named. He made gifts to several of his grandchildren. He gave to his daughter Mrs. Magee Mississippi levee bonds Nos. 1 and 2; to his granddaughter Cathleen Chrisman McFadden bonds Nos. 5 and 6, and to his granddaughter Jennie Nelson bonds Nos. 7 and 8.

It will be seen that all of the Mississippi levee bonds in this will were .diposed of in the bequests we have just mentioned, except bonds 3 and 4, and it will be seen from the reading of items 7 and 8 in the will that he names those bonds twice: First, in the legacy to Mrs. Bryant; and, second, in that to Clara May.

Now, what was Judge Chrisman's intention? Was it to give to his friend Mr. Z. D. Davis, as trustee for the use of Mrs. Bryant and her children, the sum of three thousand dollars to be evidenced by three Mississippi levee bonds, the income from which to be expended for her benefit; and was it to give Clara May the sum of two thousand dollars, to be evidenced by two Mississippi levee bonds, which were to be held for her benefit by the guardian of her estate?

It appears from Judge Chrisman's will that he had made liberal provisions for his son, the appellant, and for his daughter. It was clearly his purpose to accord to his several grandchildren a fair treatment in his provisions for them. It is shown in the testimony that Mrs. Bryant, the granddaughter of Judge Chrisman, was in needy circumstances, and that he, out of the kindness of his heart, had been making provision for her support. He therefore, when he made his will, knew the necessities of Mrs. Bryant and her children. It certainly was his purpose to give for her benefit, and the benefit of her

children, the amount stated in his will. It was likewise his purpose to give the amount named to Clara May in the manner he specified. All this is shown, not only by the circumstances and situation of the parties as manifested in the evidence, but also from his very plan and terms of disposing of these amounts in trust for the use and benefit of the beneficiary.

If one should read the will without particularly noticing the description of the bonds, but only read for information as to the disposition of the estate and provisions for the several beneficiaries thereof, there could be no question but that Judge Chrisman intended to give three thousand dollars for the benefit of Mrs. Bryant and her children, and two thousand dollars for the benefit of Clara May.

It does seem to us that the reading of the will will convince, so that there can be no doubt that it was the testator's intention to give to Mrs. Bryant and her children three thousand dollars in bonds. It is apparent in describing the bonds given in the two legacies, the writing of the Nos. 3 and 4 two different times was a clerical error, and that it was not the testator's purpose to give these same two bonds in both legacies, nor to bequeath them to the two parties as tenants in common.

We therefore conclude that the chancellor was right in deciding that the legacy to Mrs. Bryant was a general legacy, and in placing the burden of supplying the two bonds necessary to make both legacies the full amounts intended on the residuary legatees and devisees.

We quote from the final decree to show the finding of the chancellor:

"That the last will and testament of the said J. B. Chrisman is construed so as to hold that item No. 7 in so far as it relates to bonds in the sum of three thousand dollars, is a general legacy to be satisfied by the purchase by the executor out of the general residue of the estate not specifically devised and bequeathed levee bonds."

It follows from what we have said that we see no force in the contention, by appellant, that there is in this will an identical bequest to two different persons.

It is clear from the will, considered together with the environments of Judge Chrisman and the circumstances under which the instrument was made, that it was evidently his purpose and plan, flowing from the wideness of his charity, to aid his dependent relatives; and, to the end that this might be put into effect, he gave to his granddaughter Mrs. Bryant three thousand dollars, and his granddaughter Clara May Chrisman two thousand dollars, the amounts named respectively in the two items, which amounts were to be held in trust for their benefit, and to be evidenced by interest-bearing bonds.

*Affirmed.*